Mr. Chief Justice Watkins delivered the opinion of the Court. This was a suit in chancery, brought by Bozeman against the State Bank and Lambert J. Reardon. It appears to have been conducted by both parties throughout with but little regard to the rules of chancery practice, and hence it becomes necessary to state the pleadings and facts more in detail than would otherwise be required for a correct understanding of the questions presented. On the 2d April, 1842, Simeon Buckner executed a deed of mortgage to Lambert J. Reardon, of a large amount of property, consisting of lands, negroes and chattels, conditioned to secure the payment of certain notes made by Buckner to the Real Estate Bank and the Bank of the State of Arkansas, amounting in all to about $20,000, and nearly equally divided between the two Banks. Reardon was security for Buckner on all of the notes, but on the different notes various other persons were co-securities with him. Among the notes specified in the mortgage was one for $3,500, due to the State Bank, upon which Bozeman and Reardon were the securities, and one for $6,000, due to the same Bank, for which Bozeman was not security. In August, 1842, Reardon proposed to pay to the State Bank $4,000, on condition of being released from all his liabilities for Buckner in that Bank. The directors acceded to this proposition, being moved thereto, as appears from an extract of their minutes, because Reardon was embarrassed in respect of his other indebtedness to the Bank due on his* own account: the attorney for the Bank was directed to prepare the necessary papers to carry the resolution into effect, and the cashier was directed to apply the money when received towards the extinguishment of Buckner’s note for $6,000, on which Reardon was security. On the 9th of September, 1842, the instrument referred to was executed by the President of the Bank on her behalf, — not being in form a release, but a covenant not to sue. After reciting the two notes referred to, and the payment to her, by Reardon, of $4,000, in Arkansas money, to be applied on either or both of said notes, as she might choose, the Bank covenanted with him, in consideration of the amount paid, that he should not be sued or moved against on or in respect of either of said notes by her or by any of her co-securities thereon, and if he should be sued or moved against by any or either of such co-securities on said notes, the Bank bound herself to indemnify and save him harmless in respect thereof. Bozeman, being sued by the Bank, pleaded this instrument as a release, in bar of the action. Judgment went against him, and on error it was affirmed in this court. (See Bozeman v. The State Bank, 2 Eng. 328.) The decision there was, that the agreement referred to was not a release, but a covenant not to sue Reardon, which did not amount to a release, and could not be pleaded as such by any co-obligor of his. Bozeman then exhibited his bill in chancery against the Bank and Reardon, setting out the execution of the mortgage, and alleging that, since then, Buckner had departed this life wholly insolvent; that Reardon had sold a large amount of the mortgaged property, and realized large sums of money from it; also the proposition of Reardon, its acceptance, and the covenant of the Bank not to sue him. The bill then proceeds on the ground that the complainant, if forced to pay the entire debt, would have to sue Reardon for contribution of his half of it, who, in turn, would recover it of the Bank on her covenant of indemnity ; that the Bank in equity and good conscience had no right to enforce the complainant to pay but one-half of the debt for which she had recovered judgment at law against him, being the same result which would be attained by that circuity of action. The prayer of the bill was that the Bank might be perpetually injoined from collecting the one-half of the judgment at law and interest thereon and for general relief. The Bank and Reardon answered, not denying any of the alie. gations of the bill, but resisting his equity on tbe ground that the Bank, as she had the right to do, had applied the payment made by Reardon upon the $6,000 note, and that the covenant not to sue Reardon was not a release of Bozeman on the other debt for which judgment had been obtained against him. The complainant then filed an amendment, reciting the bill, and farther alleging that the property embraced in the mortgage to Reardon, was worth at least $15,000 of lawful money, and that Reardon had in fact sold a large amount of the property, and realized enough money from it to have paid both of the debts due to the State Bank in full. That, out of the proceeds received^ Reardon had paid the $4,000 referred to in Bank paper, and at the time this arrangement was made, it was well known to the Bank that Buckner was hopelessly insolvent; that, by the combination between the Bank and Reardon, the complainant had been deprived of the means of indemnity by resorting to the mortgaged property and securities held by Reardon, (but how or why he was so deprived, is not stated and does not appear,) and that the Bank had refused to apply any part of the $4,000 on the note for which he was security. The only prayer of the amended bill was for general relief. Reardon and the Bank answered as before, and that the payment of $4,000 made by Reardon was Arkansas bank notes, then passing current at 50 cents on the dollar : they denied that the property mortgaged to Reardon was worth $15,000 of lawful money; but on the contrary, it was encumbered with prior liens, specified to the amount of $55,000, and that in fact Reardon did not realize over $6,000 of proceeds from the sale of the mortgaged property. The defendants subsequently filed an amendment to their answer, in which they set up the proceedings and judgment in the action at law of the Bank against Bozeman, and relied on the same by way of answer, as a conclusive adjudication of the same matters, and a bar to any relief being sought by Bozeman in chancery. The cause was heard on bill, answer, replication and exhibits, no other evidence being adduced; and the court below decreed that Bozeman should pay to the Bank the one-half of the judgment at law andinterest and the costs of that suit; that the Bankbe perpetually injoined from having any execution against Bozeman for the other half of the judgment at law and interest, and that she pay the costs of the suit in chancery. From this decree, the Bank and Bozeman prosecute their cross appeals. The equitable rights of the parties arising upon the facts stated, are exceedingly plain. Without any reference to the mortgage executed by Buckner to Reardon, the covenant of the Bank not to sue Reardon, in consideration of the $4,000 paid by him, upon the two debts due in that Bank, was in effect a receipt in full for his due proportion of the debts, supposing the principal debtor to be insolvent and the co-securities to be solvent. The solvent securities on each note were bound to contribute as between themselves the amount necessary to discharge it. No arrangement or agreement between the creditor and one of the securities, without the concurrence of the other, could change the rights of the securities so as to impose the burthen of paying the debt wholly upon one, or upon either beyond his due proportion. It is not material what Reardon paid, or whether he paid any thing, or on whát particular note the Bank applied the payment. She had a perfect right to forgive any one of the securities the due proportion of any or all of the debts falling upon him to 'pay, and of this no co-security would have any just cause to complain. As on the one hand, noreceipt which the Bank could give Reardon, nor any agreement made with him, could give him a recourse on the principal debtor, or a right to a ratable contribution from the co-securities for any thing more than the actual amount or value of what was paid by him; so, on the other hand, no such agreement between the creditor and a security, could exempt him from contribution to a co-security, without exonerating the co-security to a corresponding extent. Here, for instance, the only conceivable motive the Bank could have in applying the $4,000 paid by Reardon wholly towards the extinguishment of the $6,000 note, was that Reardon’s co-securities on that note were insolvent or of doubtful ability, and that Bozeman, the co-security on the note for $3,500, now in question, was solvent. The covenant to indemnify Reardon against any suit for contribution by any co-security, is not material, only so far as it may go to show the true character of the transaction, and the extraordinary notions of equity which the parties to it appear to have entertained. Because, if Reardon paid his due proportion, or if the Bank accepted less and in lieu of his due proportion, he was not liable to any suit for contribution, and no such covenant of indemnity was necessary. In equity, the covenant not to sue Reardon, was a release to him from both of the debts, and the idea that the money, he paid as the consideration for that release, could, for any reason, be applied on one of the debts alone, so as to compel a co-security for the other debt to pay the whole of it; is not to be tolerated. The most favorable construction for the Bank, that can be put upon the covenant is, that, stripped of the disguise thrown around it by the technical rules of law, the Bank, upon a consideration, or without a consideration, had acknowledged to have received of Reardon his ratable proportion of both debts, ,she thereby agreeing to look to the other co-securities for their proportions of the common loss which had fallen upon them by reason of their securityship for an insolvent principal. It is urged, on behalf of the Bank, that Bozeman has never -been required to pay the debt, and without having paid any thing, he has not been damnified, and is not entitled to relief, and further, that having elected to make his defence in that suit at law, chancery has no jurisdiction to afford him relief in respect of any matter tried and determined at law. According to what we conceive to be the scope of Bozeman’s bill, it is true he was not entitled to any injunction of the judgment at law, without paying, or offering to pay, the one-half of it, admitted to be due and not sought to be injoined: but no injunction was ever moved for or granted in the cause, and there was no impediment why the Bank should not have proceeded to execution of the judgment. As to the.objection for want of jurisdiction, it is not tenable, unless we deny that Bozeman is entitled to any relief at all, either at law or in chancery. The de-cisiou in 2 Eng. 828, which is the law of the case, is conclusive that the defence was not available to him at law, because technically he could not plead as a release the covenant of the Bank not to sue Reardon. That a defence, or ground of relief is not available, or not adequate at law, is the true theory of chancery jurisdiction; and if the party attempted in good faith to make the defence at law, the decision of the court of last resort that it was not there available to him, is the best evidence of his right to seek relief in a court of equity. On the appeal of the Bank, we find no error in the decree of the chancellor. The only question in the case on this record, upon the appeal of Bozeman, is, whether he is entitled to any, and what relief beyond that awarded to him by the decree. Considering the case now with reference to the mortgage executed by Buckner, the rights of the parlies in equity were these : As it does not appear that Reardon stipulated for any separate indemnity, or by consent of the other securities acquired any right to be indemnified in preference to them, upon the execution of the mortgage to him by Buckner, he became trustee of the property and the fund arising from it, for the common benefit of himself and his co-securities upon the several debts specified in the mortgage, and intended to be secured by it, and he would be holden to the due execution of this trust in good faith and with ordinary diligence. He was bound to have applied the proceeds of the mortgaged property to the discharge of those debts, and (if not sufficient to pay them in full) pro rata, according to their respective amounts; and in such case, the residue unpaid on each would be the amount for which all the securities on that debt would be jointly liable, and for the payment of which Reardon, as well as any co-security, would have to contribute his due proportion. Any co-security thus interested in the due execution of the trust,had the right, by bill in equity, to have an account taken against the trustee to charge him with the proceeds received, or which ought to have been received by him-, in the exercise of a reasonable diligence; to have the assets marshaled and applied to the discharge of the different debts ; and to such a bill all the persons interested would be necessary parties. So, either of the two Banks, as the ultimate beneficiaries of the trust, had the right to proceed in chancery to have the mortgaged property subjected to the payment of the debts specified and intended to be secured, because equity would rather encourage than restrain the creditor in seeking to obtain satisfaction in the first instance out of the fund set apart by the principal debtor for that purpose, instead of coercing payment of the various securities, who, in turn, would have to resort to the fund for indemnity. But no obligation rested upon the Bank to do this, and it does not appear, upon this record, that b3,r any act of hers, she in any manner interfered or prevented Bozeman from resorting to equity for an account against the trustee, and to have the assets marshaled and distributed. On this branch of the case, the remedy of Bozeman was not against the Bank, but against the trustee. Clearly we think the whole scope of the original bill is to be released from one-half of the debt on which he was security, on the ground that the contract between the Bank and Reardon operated as a payment or extinguishment of one-half of it. The allegations of the amended bill manifest an intention on the part of the pleader to charge Reardon with the amount received on the mortgage. Except this allegation, there is nothing on which to base any decree against him ; nor is any specific relief asked for against him, as is proper in all cases, unless it be .supposed that the court understands what relief the complainant wants, better than he does himself, or that the omission could not occasion any surprise to the defendant! The rule is that, where upon the case made and put in issue by the allegations of the bill and sustained by the evidence, if it appears upon the hearing that the complainant is entitled to some relief, though not to the. specific relief asked for, he may, under the general prayer,- obtain such rélief as he ought to have, if not inconsistent with the specific relief asked for. But even if we could apply this rule to the case now under consideration, the complainant, for another reason, could not have taken any decree against Reardon. For aught that the court know, the Real Estate Bank, and the other co-securities interested in the due execution of the trust by Reardon, were necessary parties, and no decree undertaking to ascertain or distribute the fund received by him, could affect their rights unless they were before the court. As the complainant could have had no' relief against Reardon in respect of the proceeds of the mortgaged property, his right to such relief is not affected by the decree, which is to be regarded as a dismissal of that part of the bill, without prejudice to any rights the complainant may show himself to be entitled to in another suit. The decree of the court below will be affirmed, each party paying the costs of his appeal in this court.